## DICKASON GOODMAN LUMBER CO. v. PENN MUT. LIFE INS. CO.

### No. 628.

Circuit Court of Appeals, Tenth Circuit.

July 7, 1932.

J. H. Maxey, of Tulsa, Okl. (Chas. A. Holden and Wilbur J. Holleman, both of Tulsa, Okl., on the brief), for appellant.

R. A. Kleinschmidt, of Tulsa, Okl. (A. K. Little, of Oklahoma City, Okl., and Marvin T. Johnson, of Tulsa, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and PHILLIPS, Circuit Judges.

COTTERAL, Circuit Judge.

The insurance company, appellee here, acquired by assignment a note of Lester B.

Gum, for $7,300, made in favor of Gum Brothers Company, and a mortgage he executed on June 24, 1930, as security therefor, upon four lots owned by him in Tulsa, Okl. The mortgage was recorded on July 7, 1930, and the assignment on July 22, 1930. Vernon D. Waltermire and wife bought and took possession of the property. The insurance company brought this action against the lumber company and the Waltermires, alleging that between July 23 and August 10, 1930, they damaged such mortgage security to the extent of $5,500, by dismantling a dwelling house and garage located on the premises, leaving them in a wrecked condition, and refusing to restore them to their former condition. The lumber company filed a demurrer to the petition, which was overruled, and then filed a verified answer. The case was tried to a jury and resulted in a verdict for $3,800 against the lumber company and a judgment thereon, from which it brings this appeal.

The answer pleaded several defenses. One of them was a general denial, except such averments of the petition as were admitted. Paragraphs 3, 4, 5, and 7 of the answer were stricken on motion of the plaintiff. Paragraph 3 admitted the lumber company entered on the premises and undertook to prepare the buildings for remodeling and alleged the entry and preparations were made under the mistaken belief of the company it had entered into a valid contract for the work with the Waltermires, but discovered the purported contract insisted upon by them differed from the contract authorized by the company, the company notified them it had not made or authorized such contract and would proceed no further with the work, tendered back the cash consideration they had paid, and offered to restore the improvements to the former or a better condition, that the depreciation in the value of the property was not due to its fault, but was attributed to the Waltermires in not permitting the company to restore the improvements.

Paragraph 4 of the answer renews the offer and tender to the Waltermires of the cash consideration they paid to the lumber company, theretofore refused by them, and renews the offer to go upon the premises and at its expense restore the same to the former or a better condition. Paragraph 5 denies it executed or authorized any person to execute the purported contract which the Waltermires demanded the lumber company should perform. Paragraph 7 pleads the action was not brought by the real party in interest.

At the close of plaintiff's evidence, the lumber company moved for a directed verdict and the motion was overruled. Evidence was introduced by the company, portions of it were admitted and excluded over objection, the company moved upon all the evidence for a directed verdict, and that motion was denied.

The court charged the jury that the undisputed evidence showed the lumber company entered upon the property to repair the buildings, thereby damaging the mortgage security of the plaintiff, and directed a verdict for the plaintiff against the lumber company, leaving to the jury only the assessment of the damages.

At the trial, Waltermire testified: He and his wife have been in possession of the property since July 21 or 22, 1930. They made a contract with L. E. Dunn, representing the lumber company, for remodeling the dwelling house. The company went on the property and dismantled the house, tearing out walls, partitions, and doors, and removing two porches, part of the foundation, etc. After three days the company quit the work. The acts done by the lumber company were necessary to the remodeling of the house. The Waltermires have an action pending against the company for dismantling the house. Before December, 1930, the company offered to board up the house and further to put the property in its former condition and return the $500 they had paid the company, but they refused the offers, insisting they had a right to demand that the improvements be made under the contract. A letter of the lumber company to the Waltermires, dated August 12, 1930, offering to return the payment of $500 and restore the property, was excluded.

Witnesses testified on both sides concerning the damages wrought to the property, ranging from $1,435 to $5,000.

L. E. Dunn testified: He was employed by the lumber company in July, 1930, as salesman, his duties being remodeling buildings and superintending erection of small structures. He had been looking after repair jobs for eighteen months. He gave the Waltermires two estimates for the work, subject to approval of some officer of the lumber company, of $5,652 and $7,435, and Dickason, president of the company, approved them. He made a third estimate of $9,880, which was not approved by Dickason, but Dunn, believing he would approve it, signed the contract and started the work. That contract

was admitted in evidence. On his return, Dickason refused his approval and offered to proceed on the second estimate, but the Waltermires refused the offer, and the work was stopped. The dismantling was done by the employees of the lumber company under Dunn's supervision. When an estimate was approved by the company, he would superintend the work. He had told the Waltermires prior to the first estimate it required approval of the company. He did not tell the Waltermires its approval was necessary on the contract, but supposed they understood it.

Dickason testified Dunn was employed by the lumber company as salesman and solicitor, with authority to make estimates, but not to sign contracts, except for $50 or less; he approved the first two of Dunn's estimates, the third was never submitted to him, and when he learned the last contract was made, he refused to approve it, and immediately stopped the work. He did not tell the Waltermires Dunn had no right to make contracts for the company until after the contract in question was made. He knew Dunn had conducted the negotiations, but thought the arrangements had been closed on the second estimate.

A letter, dated September 20, 1930, of the lumber company to Gum Brothers Company, as agents of the plaintiff, containing an offer to go on the property and at its expense put it in condition to avert damage from weather and trespass pending the litigation between the Waltermires and the company, was offered and excluded.

The lumber company assigns numerous errors but argues only four propositions, as follows: (1) The offer to restore the mortgage security prior to suit was a defense in bar or in mitigation of damages; (2) the contract signed by agent Dunn was not admissible without a showing of his authority to execute it; (3) there was error in overruling the demurrer to the evidence and in denying the motion of the lumber company for a directed verdict; (4) the issue as to Dunn's authority was one for the jury.

■■■ The plaintiff was entitled to pursue its remedy by suit against others for injury to the property which impaired its mortgage security. Sutherland on Damages (4th Ed.) vol. 4, § 1034; Jones on Mortgages (8th Ed.) vol. 2, §§ 858, 859; 41 C. J. 652. This the lumber company concedes, but bases the defense to the damages on the principles which it contends are applicable in trover actions, where the taking of property is not wilful or is technical. But this was not such an action, and those principles cannot be applied. It was brought under the Oklahoma procedure, which abolishes former rules of pleading. Section 263, C. O. S. 1921. But it is properly classified as an action on the case. Jones on Mortgages (8th Ed.) vol. 2, § 859; 6 Cyc. 691.

■ However, there was no offer of restoration to the plaintiff. It was made only to the Waltermires. Paragraph 4 of the answer renewed that offer. They would not accept it and insisted on performance of the contract. Even if it be assumed as claimed that the offer in the answer applied to plaintiff, it was not available, as the Waltermires were in possession of the property, demanding that the remodeling contract be performed, and plaintiff without their consent could not authorize a re-entry on the premises. The offers and the letters communicating them and the check tendered as a refund were properly excluded.

■ The contention based on Dunn's want of authority to execute the contract is also untenable. The direct testimony is that Dunn did not have that authority. It is undisputed that the employees of the company dismantled the building, and that Dunn was authorized to superintend the work under a valid contract. His authority was not an issue and it was immaterial, as paragraph 3 of the answer admitted the company entered on the premises and undertook to prepare the buildings for remodeling. This fixed its liability in damages. It is true that paragraph was stricken, but it may be referred to as an exception reserved from the general denial, which traversed the allegations of the petition, *except as admitted*.

■ There was no error in overruling the demurrer to plaintiff's evidence, as, by familiar rule, it was waived by the introduction of evidence in defense. The motion of the lumber company for a directed verdict was not well taken, because the plaintiff's right to a recovery of damages was established. The company was in no way injured by striking the paragraphs from the answer, as the subject-matter if competent was provable under a general denial. 21 Ency. Pl. & Pr. pp. 832 to 835.

No sufficient reason appears for disturbing the judgment. It is accordingly affirmed.